UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Petitioner, | ) ) ) | |
| v. | ) ) | No. 3:16-MC-46-TAV-HBG |
| SOUTHEAST FOOD SERVICES COMPANY, LLC D/B/A WENDY'S, | ) ) ) ) | |
| Respondent. | ) | |

**MEMORANDUM AND OPINION**

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is an Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced ("the Application") [Doc. 1], filed by the Equal Employment Opportunity Commission ("the Commission") on November 18, 2016. The parties appeared before the Court on February 28, 2017, for a hearing. Attorneys Mark Chen and Steven Lipsey appeared on behalf of the Commission. Attorney Chadwick Hatmaker appeared on behalf of Respondent. The Court has considered all the filings and the oral arguments presented at the hearing. For the reasons more fully explained below, the Court will **DENY** the Application.

I.   **BACKGROUND**

The Commission is currently investigating a charge of employment discrimination filed by Christine Cordero against Respondent under Title VII of the Civil Rights Act of 1964. In the course of its investigation, the Commission issued a subpoena seeking information and documents

regarding employment data. Respondent has refused to provide the requested information. For purposes of the Application, the following facts are not in dispute.

On September 25, 2014, Ms. Cordero was hired by Respondent as a crew member to work at one of its fast-food locations. Approximately two weeks later on October 11, 2014, Respondent offered to promote Ms. Cordero to crew leader. In connection with the promotion, Ms. Cordero was asked to sign a general release, waiving all claims she may have against Respondent up to the date of the release's execution. For the past 20 years, it has been Respondent's promotion policy to require employees to sign a release of all claims as a condition of promotion. The release does not affect any future claims an employee may have. At the time Ms. Cordero was asked to sign the release, she did not have any claims. Nonetheless, she declined to sign the release because she felt that Respondent was discriminating against her merely by asking her to sign a waiver. Consequently, Ms. Cordero was not promoted due to her refusal to sign the release.

Ms. Cordero continued to work for Respondent but filed a charge of discrimination with the Commission on December 5, 2014. The charge alleges that Respondent retaliated against Ms. Cordero by failing to promote her due to Ms. Cordero's refusal to sign the release. Although Ms. Cordero was not promoted, Respondent still gave her the 25-cent pay raise, as well as the same training, that accompanied the promotion. Ms. Cordero voluntarily resigned from her job on April 20, 2015.

Having learned that Respondent required its employees to sign a release of claims as a condition of promotion, the Commission sent Respondent a pre-subpoena letter on June 9, 2015, notifying Respondent of its intent to expand its investigation. In addition, the letter requested various information about all former and current employees who worked for Respondent from December 4, 2012 to present. On February 18, 2016, after not receiving the information

requested,[1] the Commission issued a subpoena which sought the same information identified in its pre-subpoena letter. Specifically, the subpoena seeks the identity and contact information of all (1) current and former employees since December 4, 2012, (2) current and former employees who signed a release of claims since December 4, 2012, and (3) current and former employees who were promoted since December 4, 2012.[2] The foregoing requests also seek information related to the employees' dates of hire, promotion, advances, and termination, reasons for termination, and current and former job titles. Moreover, the subpoena requests copies of all releases Respondent had required its employees to sign in order to receive a promotion and copies of various documents relating to information about the system or software components of Respondent's Human Resource Information System.[3]

Respondent continued to object to the subpoenaed information, prompting the Commission to file the instant Application with the Court on November 18, 2016. Respondent filed a response in opposition on February 22, 2017.[4]

---

[1] Respondent did respond to the Commission's pre-subpoena letter and also made efforts to resolve the matter by limiting the scope of the information requested and proposing to discontinue its use of a general release as a condition of promotion. However, the parties could not reach an agreement, prompting the Commission to file its subpoena.

[2] Originally, the subpoena also requested the identity and contact information of all current and former employees since December 4, 2012, who had refused to sign a release. The Commission eliminated this request after learning that Ms. Cordero was the only employee who had ever refused to sign a release of claims. [Doc. 2 at 5 n.1].

[3] Respondent explains in its brief that it does not have a Human Resource Information System that is capable of collecting the requested information, and would instead be required to review each individual employee file to retrieve the information requested. [Doc. 5 at 14].

[4] The Court notes that the Application was not served upon Respondent. The Court admonishes the Commission for its failure to properly serve Respondent, which has caused delay in adjudicating this matter.

## II. THE COMMISSION'S INVESTIGATIVE POWER

The Commission is empowered to investigate charges of discrimination and enforce Title VII of the Civil Rights Act. 42 U.S.C.§ 2000e-5(a)-(b). Administrative subpoenas may be used to assist investigative efforts in uncovering acts of discrimination. *See id.* § 2000e-9 (incorporating the provisions of 29 U.S.C. § 161, which allows the issuance of subpoenas to parties under investigation). Specifically, the Commission has authority to serve subpoenas to gain "access to . . . any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is relevant to the charge under investigation." *Id.* § 2000e-8(a). While "courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light" on the allegations against the employer," the Commission's investigative authority should not be construed so broadly as to render the relevancy requirement "a nullity." *E.E.O.C. v. Shell Oil Co.*, 466 U.S. 54, 68-69 (1984). "The EEOC has the burden to demonstrate the relevancy of the information sought in the subpoena." *E.E.O.C. v. Dillon Cos.*, 3310 F.3d 1271, 1274 (10th Cir. 2005).

## III. ANALYSIS

In this case, the Commission argues that "[i]t is undeniable that the requested information 'might cast light' on the allegations against the employer." [Doc. 2 at 8]. Because Respondent admitted it did not promote Ms. Cordero due to her refusal to sign a release of all claims and that it has required all employees to sign a similar release prior to being promoted, the Commission asserts that it "requires the contact information for Respondent's employees to mail questionnaires in order to determine if those employees gave up any claim in order to receive promotions." [*Id.*].

Respondent contends that the sole issue with regard to the instant charge is whether Respondent's uniform policy regarding a signed release as a condition of promotion is sufficient

4

to sustain Ms. Cordero's Title VII retaliation claim, and that the information sought for the questionnaires is neither relevant nor necessary to the Commission's investigation.

Relevancy is demonstrated when the Commission shows that it has a "realistic expectation rather than an idle hope that the information requested will advance its investigation." *E.E.O.C. v. Konica Minola Bus. Sols. USA, Inc.*, 639 F.3d 366, 369 (7th Cir. 2011) (quotations omitted). It is not immediately clear to the Court how the information sought by the subpoena will advance the Commission's investigation. The Commission is investigating an individual charge of discrimination: that Respondent denied Ms. Cordero a promotion after she refused to sign the release. There are no other additional charges of retaliatory discrimination and no other charging party besides Ms. Cordero. Moreover, there is no dispute that Respondent asked Ms. Cordero to sign the release, that Respondent's longstanding policy has been to require employees to sign a release as a condition of promotion, and that Ms. Cordero was not promoted because she declined to sign the release. Therefore, whether other "employees gave up any claim in order to receive promotions" is irrelevant to resolving Ms. Cordero's charge.

Moreover, the Commission's decision to expand its investigation after it learned of Respondent's promotion policy does not provide any further justification for the subpoenaed information. The Commission's decision to expand its investigation does not statutorily expand its investigative power. The Commission's subpoena power remains limited to information that is "relevant to the *charge under investigation*." 42 U.S.C. § 2000e-8(a) (emphasis added). The letter does not change the nature of the instant charge and as conceded by the Commission, no other charge or charging party is involved in this matter.

The Commission maintains that because Respondent potentially engaged in an unlawful employment practice that may have affected other employees, the Commission has a duty to

5

investigate whether other employees knowingly waived potential or actual Title VII claims and whether any adverse employment action was taken by Respondent toward any other employee based on a refusal to sign the release. [Doc. 7 at 3]. The Tenth Circuit Court of Appeals recently rejected a similar argument, finding that "a single discriminatory act does not, by itself, warrant a broader pattern-or-practice investigation." *E.E.O.C. v. TriCore Reference Labs.*, 849 F.3d 929 (10th Cir. 2017) (rejecting the notion that an employer's alleged individual act of discrimination entitled the Commission to evidence that "could be part of a pattern or practice of discrimination") (citing *E.E.O.C. v. Burlington N. Santa Fe R.R.*, 669 F.3d 1154, 1157-58 (10th Cir. 2012) ( holding that while "[a]ny act of discrimination could be part of a pattern or practice of discrimination . . . not every charge of discrimination warrants a pattern or practice investigation.")).

During the February 28 hearing, the Commission insisted that sending the questionnaires to other employees is the only way to verify Respondent's contention that no other employees aside from Ms. Cordero refused to sign the release. That may be, but it is unclear how another employee's refusal to sign a release "might cast light" on the instant charge, particularly where there is no dispute that for the past 20 years, all employees have been required to sign a general release of all claims as a condition of promotion. In fact, the Commission eliminated from the subpoena a request for information on all current and former employees who had refused to sign a release since Respondent had advised that Ms. Cordero was the only employee who had ever refused. [Doc. 2 at 5 n.1].

Additionally, the Commission submits that the questionnaires will determine whether any employees "gave up" a claim or whether any employees did not seek promotions because they knew Respondent required a signed waiver. [Doc. 2 at 8]. The impact of Respondent's promotion policy on other employees, however, does nothing to cast light on whether unlawful discrimination

6

occurred to Ms. Cordero. In reaching this conclusion, the Court observes that the charge does not allege that Ms. Cordero was treated differently compared to other employees who were offered promotions or that Respondent's promotion policy was applied in a disparate manner. It is undisputed that all employees who have been offered a promotion were asked to sign a release and that Ms. Cordero was not promoted because of her refusal to sign the release. Therefore, the unlawfulness of Respondent's employment practice is not dependent on how many other employees signed a release.

Concessions made by the Commission during the February 28 hearing are even more telling that the information it seeks is not relevant to the charge under investigation. Specifically, the Commission admitted for the first time that it was "looking at a possible class action."[5] The Commission was unable to say whether Respondent's promotion policy was legal or illegal but asserted that it must look at the entire picture, which requires contacting other employees. Moreover, in its reply brief, the Commission submitted that Respondent's admission that it has implemented its promotion policy for the past 20 years was "grounds for a finding of probable cause that Respondent has engaged in an unlawful employment practice under Title VII." [Doc. 7 at 2]. While it remains unclear to the Court how questionnaires sent to other employees is necessary for determining the lawfulness of a policy practice that is not in dispute, it is readily apparent to the Court that the information would assist the Commission in identifying other potential claimants. If the Commission desires to conduct a broader "pattern-or-practice" investigation, it is empowered to file a Commissioner's charge. *See* 42 U.S.C. § 2000e–5(b) (a

---

[5] Citing the Supreme Court's decision in *Univ. of Pa. v. E.E.O.C.*, 493 U.S. 182, 194 (1990), the Commission submits that it does not need to present a "specific reason for disclosure of the requested information." [Doc. 2 at 8]. The correct standard, however, is that the Commission does not need to "demonstrate a specific reason for disclosure, *beyond a showing of relevance*." *Univ. of Pa.*, 493 U.S. at 194 (emphasis added).

discrimination charge may be filed "by or on behalf of a person claiming to be aggrieved, or by a member of the Commission"). The Commission, however, may not use Ms. Cordero's charge as a backdoor means to obtain information that is more appropriately available through other channels. *See E.E.O.C. v. Royal Caribbean Cruises, Ltd.*, 771 F.3d 757, 762 (11th Cir. 2014) ("the EEOC may not enforce a subpoena in the investigation of an individual charge merely as an expedient bypass of the mechanisms required to file a Commissioner's charge.").

The Commission advances its position by relying on case law in which discovery of pattern and practice evidence was permitted because said evidence provided context or comparative information on whether discrimination had taken place. But this is not the type of case in which "evidence that an employer discriminated in one situation or employment position is relevant to a determination of whether the employer discriminated in other circumstances." *E.E.O.C. v. Roadway Exp., Inc.*, 261 F.3d 634, 638 (6th Cir. 2001) (citation omitted) (finding that the subpoenaed information, which went beyond the specific hiring and promoting practices alleged in the charge, were relevant where a Commissioner's charge alleged that the employer had engaged in a number of discriminatory policies and practices based on race and gender).

This matter is more analogous to *Royal Caribbean Cruises, Ltd.*, wherein the Eleventh Circuit Court of Appeals upheld the district court's finding that the subpoenaed information regarding other employees was not relevant to the charge under investigation. Specifically, the charging party in that case filed a charge of discrimination against Royal Caribbean when it failed to renew his employment contract after he was diagnosed with a medical condition. 771 F.3d at 759. In relevant part, Royal Caribbean contended that the employee was disqualified for duty based upon the medical standards set forth by the Bahamas Maritime Authority. *Id.* In response, the Commission subpoenaed company wide application, hiring, and termination data with regard

to employees who were discharged or whose contracts were not renewed due to a medical reason. *Id.* The Court found that the information sought was "aimed at discovering members of a potential class of employees or applicants who suffered a pattern or practice of discrimination, rather than fleshing out Mr. Morabito's charge." *Id.* at 759-61. In making this finding, the Court observed that data regarding other employees and applicants would not cast light on the charge, particularly where Royal Caribbean admitted that Mr. Morabito was terminated because of his medical condition. *Id.* at 61.

In rejecting the Commission's argument that the subpoenaed information was relevant because it is the same type of discrimination alleged by the charging party, the Court reasoned that while "[i]t might be that this information is related to Mr. Morabito's individual charge, [] the standard by which the EEOC's subpoena power is governed is '*relevant* to the charge under investigation.'" *Id.* at 761 (quoting 42 U.S.C. § 2000e–8(a)) (emphasis in original). The Court continued,

> The relevance that is necessary to support a subpoena for the investigation of an individual charge is relevance to the contested issues that must be decided to resolve that charge, not relevance to issues that may be contested when and if future charges are brought by others. Because RCCL has admitted that the reason that it refused to renew Mr. Morabito's contract is his medical condition, whether it refused to renew other employee's contracts for the same reason is irrelevant to his charge. That issue is settled. Although eradicating unlawful discrimination and protecting other as-yet undiscovered victims are laudatory goals and within the Commission's broad mandate, the EEOC must still make the necessary showing of relevancy in attempting to enforce its subpoena.

*Id.*

Similarly, Respondent in the present matter has admitted that it did not promote Ms. Cordero because of her refusal to sign the release. Respondent has further admitted that it has

9

required all employees for the past 20 years to sign a release of claims as a condition of promotion. Therefore, whether other employees refused to sign the release or did not seek a promotion because they knew they would be required to sign a waiver of any claims is likewise irrelevant to Ms. Cordero's charge. The overbreadth of the subpoena is further demonstrated by the Commission's request for the contact information, as well as the hiring and termination data, of *all* employees. Simply put, "this does not appear to be a case where statistical data is needed to determine whether an employer's facially neutral explanation for the adverse employment decision is pretext for discrimination." *See id.* at 761.

Accordingly, the Court finds that the Commission has not met its burden in demonstrating that the information subpoenaed is relevant to Ms. Cordero's charge. Give the Commission's lack of explanation as to how the information would resolve the instant charge or is necessary to determine whether Respondent has discriminated against Ms. Cordero, granting the Application would surely render the relevancy requirement "a nullity." As such, the Court need not address Respondent's contention that the information sought is unduly burdensome.

## IV. CONCLUSION

For the reasons explained herein, the Commission's Application for an Order to Show Cause Why an Administrative Subpoena Should Not Be Enforced [**Doc. 1**] is **DENIED**.

**IT IS SO ORDERED**.

ENTER:

*/s/ Bruce Guyton*
United States Magistrate Judge