UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | No.: 3:16-MC-46-TAV-HBG |
| SOUTHEAST FOOD SERVICES COMPANY, LLC D/B/A WENDY'S, | ) ) ) ) | |
| Respondent. | ) | |

# MEMORANDUM OPINION

This matter is before the Court on the Equal Employment Opportunity Commission's ("EEOC") Objections to Magistrate Judge's Memorandum and Opinion Issued March 27, 2017 [Doc. 14]. The EEOC filed these objections to United States Magistrate Judge H. Bruce Guyton's Memorandum and Order ("M&O") [Doc. 10] denying its Application for an Order To Show Cause Why an Administrative Subpoena Should Not Be Enforced [Doc. 1]. Respondent filed a response to the objections [Doc. 16]. For the reasons contained herein, the Court will overrule the EEOC's objections and accept the decision of Magistrate Judge Guyton.

## I.  Background[1]

The EEOC is currently investigating a charge of employment discrimination filed by Christine Cordero against respondent under Title VII of the Civil Rights Act of 1964.

---

[1] The EEOC does not object to the M&O's background section [Doc. 10 pp. 1–3]. The Court, therefore, adopts the M&O's factual background and will also presume the reader's familiarity with this case.

In the course of its investigation, the EEOC issued a subpoena seeking information and documents regarding employment data. Respondent has refused to provide the requested information. For purposes of the current matter, the following facts are not in dispute.

On September 25, 2014, Ms. Cordero was hired by respondent as a crew member to work at one of its fast-food locations. Approximately two weeks later, on October 11, 2014, respondent offered to promote Ms. Cordero to crew leader. In connection with the promotion, Ms. Cordero was asked to sign a general release, waiving all claims that she may have had against respondent up to the date of the release's execution. For the past twenty years, respondent has required employees to sign this release of all claims as a condition of promotion. At the time Ms. Cordero was asked to sign the release, she did not have any claims. She declined to sign the release, however, because she felt that respondent was discriminating against her by asking her to sign the waiver. Consequently, respondent did not promote Ms. Cordero, admittedly because of her refusal to sign the release. Respondent gave her the twenty-five-cent pay raise, as well as the same training, however, that accompanied the promotion.

Ms. Cordero continued to work for respondent, but she filed a charge of discrimination with the EEOC on December 5, 2014. In this charge, Ms. Cordero alleges that respondent retaliated against her by failing to promote her due to her refusal to sign the release. Ms. Cordero voluntarily resigned from her position on April 20, 2015.

Having learned that respondent required its employees to sign a release of claims as a condition of promotion, the EEOC sent respondent a pre-subpoena letter on June 9, 2015,

notifying respondent of its intent to expand its investigation. In addition, the letter requested various information about all former and current employees who worked for respondent from December 4, 2012, to present. On February 18, 2016, after not receiving the information requested,[2] the EEOC issued a subpoena that sought the same information identified in its pre-subpoena letter. Specifically, the subpoena seeks the identity and contact information of all: (1) current and former employees since December 4, 2012, (2) current and former employees who signed a release of claims since December 4, 2012, and (3) current and former employees who were promoted since December 4, 2012.[3] It also seeks information related to the employees' dates of hire, promotion, advances, and termination, reasons for termination, and current and former job titles. Moreover, the subpoena requests copies of all releases respondent required its employees to sign in order to receive a promotion and copies of various documents relating to information about the system or software components of respondent's Human Resource Information System.[4]

---

[2] Respondent responded to the EEOC's pre-subpoena letter and also made efforts to resolve the matter by limiting the scope of the information requested and proposing to discontinue its use of a general release as a condition of promotion. The parties could not reach an agreement, however, prompting the EEOC to file its subpoena.

[3] Originally, the subpoena also requested the identity and contact information of all current and former employees who refused to sign the release since December 4, 2012. The EEOC eliminated this request after respondent contended that Ms. Cordero was the only employee who had ever refused to sign a release of claims [Doc. 2 p. 5 n.1].

[4] Respondent explains in its brief that it does not have a Human Resource Information System that is capable of collecting the requested information, and it would instead be required to review each individual employee file to retrieve the information requested [Doc. 5 p. 14].

Respondent continued to object to the subpoenaed information, prompting the EEOC to file the instant application with the Court on November 18, 2016. Respondent filed a response in opposition on February 22, 2017.

In the M&O, Judge Guyton denied the EEOC's application, finding that the EEOC has not met its burden in demonstrating that the information sought is relevant to Ms. Cordero's charge [Doc. 10 pp. 5–10]. The EEOC objects to the M&O on substantive and procedural grounds. The Court will address the EEOC's procedural objections first, and it will then proceed to the EEOC's substantive arguments.

## II. Standard of Review

As a preliminary point, the EEOC argues that Judge Guyton had jurisdiction only to conduct the show-cause hearing and to submit to the undersigned his proposed findings of fact and recommendations, rather than issuing the M&O [Doc. 14 p. 6]. According to the EEOC, because the application to enforce the administrative subpoena is typically treated as a dispositive matter, Judge Guyton did not possess authority to deny the EEOC's application and improperly disposed of this action [*Id.*]. Thus, the EEOC argues that this Court should treat the M&O as a recommendation, rather than a final order, and conduct a *de novo* review [*Id.*]. Respondent contends in opposition that this argument by the EEOC is of no consequence [Doc. 16 p. 5]. It submits that this procedural issue has no substantive bearing on the weight of Judge Guyton's decision [*Id.*].

4

The standard of review for a magistrate judge's ruling on a non-dispositive pretrial matter is the "clearly erroneous or contrary to law" standard. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). In certain situations, however, where the decision will finalize the district court proceeding, district courts have treated the motion as dispositive, making the ruling subject to *de novo* review. *Luppino v. Mercedes-Benz Fin. Servs. USA, LLC*, No. 13-50212, 2013 WL 1844075, at *3 (E.D. Mich. Apr. 11, 2013); *see also Jackson v. Gogel*, No. 15-35-DLB-JGW, 2015 WL 3452546, at *2 (E.D. Ky. May 29, 2015); *EEOC v. Nestle Prepared Foods*, No. 11-358, 2012 WL 1888130, at *4–5 (E.D. Ky. May 23, 2012); *Ross v. Pioneer Life Ins. Co.*, No. 07-MC-18, 2007 WL 4150957, at *4 (N.D. Okla. 2007). In this case, considering that the Court's ruling on this motion will terminate the proceeding in this district, the Court finds that it is appropriate to treat Magistrate Judge Guyton's M&O [Doc. 10] as a report and recommendation. The Court notes, however, that while it has elected to apply a more demanding standard of review, it would have reached the same result under the more deferential "clearly erroneous or contrary to law" standard.

A court must conduct a *de novo* review of those portions of a magistrate judge's report and recommendation to which a party objects unless the objections are frivolous, conclusive, or general. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). "[A]bsent compelling reasons," parties may not "raise at the district court stage new arguments or issues that were not presented to the magistrate." *Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (citing *United States v. Waters*,

158 F.3d 933, 936 (6th Cir. 1998)); *see also Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996) ("[I]ssues raised for the first time in the objections to magistrate judge's report and recommendation are deemed waived."). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations" made by the magistrate judge. 28 U.S.C. § 636(b)(1).

## III. The EEOC's Substantive Objections

In the M&O, Judge Guyton ruled that the EEOC has not demonstrated the relevance of the subpoenaed information to Ms. Cordero's claims [Doc. 10 p. 10]. "Give[n] the Commission's lack of explanation as to how the information would resolve the instant charge or is necessary to determine whether [r]espondent has discriminated against Ms. Cordero," wrote Judge Guyton, "granting the Application would surely render the relevancy requirement 'a nullity'" [*Id.*]. Thus, Judge Guyton denied the EEOC's application on relevance grounds and declined to address whether the information sought is unduly burdensome [*Id.*].

The EEOC now objects to Judge Guyton's reasoning for three primary reasons: (1) "Sixth Circuit Law Allows the Commission to Investigate a Broader Pattern-or-Practice Violation Arising from an Individual Charge"; (2) "Whether Respondent's Promotion Policy is Lawful or Unlawful is Not an Issue in the Subpoena Enforcement Action"; and (3) "The Commission Has the Authority to Investigate Recordkeeping Violations" [Doc. 14 pp. 7, 12]. The Court will address each of these objections in turn.

### A. Pattern or Practice Violation

First, the EEOC argues that Ms. Cordero's charge alleges not only that respondent engaged in an unlawful business practice that negatively affected her employment, but also alleges that respondent engaged in a pattern or practice of discriminatory retaliation [*Id.* at 8]. The EEOC bases this contention on the language of Ms. Cordero's complaint:

> I was offered a Shift Manager Position promotion but was required to sign a general release of my right to file a future discrimination complaint against the Respondent. . . . [M]y promotion offer was withdrawn by the Respondent because I would not sign the Release. Another employee, Estefany Guichapa, was promoted because she agreed to sign the release. I believe I have been retaliated against for opposing unlawful employment practices, in violation of Title VII of the Civil Rights Act of 1964, as amended [*Id.* at 7–8 (citing Doc. 3 p. 6)].

According to the EEOC, Ms. Cordero's charge alleges that respondent's business practices also, therefore, potentially harmed another employee [*Id.* at 8]. Viewed in combination with respondent's admission that it required all employees to sign the release prior to their promotion, the EEOC argues that Ms. Cordero's charge claims that respondent engaged in a pattern or practice of unlawful retaliation [*Id.*]. Thus, the information sought in the subpoena at issue—demonstrating whether other employees gave up Title VII claims in order to receive promotions—is relevant to Ms. Cordero's charge [*Id.*].

Specifically, the EEOC objects to Judge Guyton's reliance on Tenth and Eleventh Circuit case law that stands for the proposition that a "single discriminatory act" does not warrant a "broader pattern-or-practice investigation" [*Id.*]. According to the EEOC, Sixth Circuit law allows it to pursue a "broader inquiry" once it finds that discrimination may

7

extend beyond the original charge without filing an additional pattern-or-practice charge [*Id.* at 9 (citing *EEOC v. Ford Motor Credit Co.*, 26 F.3d 44, 47, 48 (6th Cir. 1994))].

Indeed, the EEOC undoubtedly possesses broad investigatory powers, *EEOC v. K-Mart Corp.*, 694 F.2d 1055, 1066 (6th Cir. 1982), and Title VII authorizes the EEOC to issue subpoenas as part of its investigations. 42 U.S.C. §§ 2000e–8(a), 2000e–9. The subpoenas must, however, "be issued in connection with an investigation of a charge and be relevant to that charge." *K-Mart*, 694 F.2d at 1066 (citing 42 U.S.C. § 2000e–8(a)). Although "courts have generously construed the term 'relevant' and have afforded the Commission access to virtually any material that might cast light on the allegations against the employer," the Supreme Court has cautioned against construing the EEOC's investigative authority so broadly that the relevancy requirement is rendered "a nullity." *EEOC v. Shell Oil Co.*, 466 U.S. 54, 68–69 (1984); *see also EEOC v. Cambridge Tile Mfg. Co.*, 590 F.2d 205, 206 (6th Cir. 1979) (asserting that "notions of relevancy at the investigatory stage are very broad, . . . so long as the EEOC is not wandering into wholly unrelated areas").

Thus, despite the EEOC's argument to the contrary, information sought by the EEOC through a subpoena must still be relevant to the underlying charge, even if the EEOC decides to broaden its inquiry. *See EEOC v. TriCore Reference Labs.*, 849 F.3d 929, 938–39 (10th Cir. 2017) (holding that the EEOC could not rely on its letter informing TriCore of the EEOC's intent to expand its investigation because the letter was not a "charge" of discrimination, "which is required for the EEOC to seek information about alleged

8

discrimination under § 2000e–8"). If the subpoenaed information is not relevant to an individual charge of discrimination, then the EEOC may file an additional pattern-or-practice charge. *See* 42 U.S.C. § 2000e–5(b) (providing that a discrimination charge may be filed "by or on behalf of a person claiming to be aggrieved, or by a member of the Commission"); *id.* § 2000e–6(e) (asserting that the EEOC also has authority to "investigate and act on a charge of a pattern or practice of discrimination"); *Shell Oil Co.*, 466 U.S. at 62 ("[W]hen a Commissioner has reason to think that an employer has engaged in a 'pattern or practice' of discriminatory conduct, he may file a charge on his own initiative."); *EEOC v. Royal Caribbean Cruises, Ltd.*, 771 F.3d 757, 762 (11th Cir. 2014) ("The Commission has the ability to file a Commissioner's charge alleging a pattern and practice of discrimination that could support a request for [broader employee] information.").

In fact, the Sixth Circuit has noted that the purpose of a Title VII charge, including a charge of pattern-or-practice discrimination, is to *initiate* an EEOC investigation. *K-Mart*, 694 F.2d at 1067. The EEOC may not, therefore, subpoena information unrelated to the charge at hand by simply announcing that it has broadened the scope of its investigation. *See* 42 U.S.C. § 2000e–8(a) (asserting that the EEOC is entitled to inspect and copy "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is relevant *to the charge under investigation*" (emphasis added)); *see also TriCore*, 849 F.3d at 935–38 (determining that the EEOC's letter to the respondent communicating that it was expanding the scope of its investigation due to its suspicion that respondent had a companywide policy of discrimination did not moot the

9

requirement that information sought be relevant to the actual charges under investigation); *Royal Caribbean*, 771 F.3d at 762 (stating that "the EEOC may not enforce a subpoena in the investigation of an individual charge merely as an expedient bypass of the mechanisms required to file a Commissioner's charge").

Broader employment context, including the employment history of other employees, may be relevant to a single charge of employment discrimination under certain circumstances, however. *Ford Motor*, 26 F.3d at 47. For instance, in *Blue Bell Boots, Inc. v. EEOC*, 418 F.2d 355 (6th Cir. 1969), the Sixth Circuit ruled that the employer's "pattern of action" was relevant to the EEOC's determination of whether the employer practiced racial discrimination in a particular instance. *Id.* at 358. "Discrimination on the basis of race is by definition class discrimination," wrote the court, "and the existence of patterns of racial discrimination in job classifications or hiring situations other than those of the complainants may well justify an inference that the practices complained of here were motivated by racial factors." *Id.* (internal citations omitted).

The Sixth Circuit extended this rationale to a charge of sex discrimination in *Cambridge Tile*, 590 F.2d at 206. It held therein that "the Commission has the power to investigate and thus to subpoena documents concerning any employer practice which may shed light on the discrimination charged." *Id.* The court further determined that the employer's potential discrimination against women in job classifications was relevant to the specific charges of sex discrimination, as well as a charge of race discrimination, in firing. *Id.* Thus, because the pattern-and-practice information was relevant to the specific

charges at hand, the court permitted the EEOC to subpoena information related to the "broader picture of discrimination" that unfolded during its investigation of the individual charges. *Id.*

The Sixth Circuit again allowed the EEOC to subpoena broader pattern information in *EEOC v. Roadway Exp., Inc.*, 750 F.2d 40 (6th Cir. 1984). The subpoenas in *Roadway* arose from two separate charges of race discrimination against the respondent. *Id.* at 41. Roadway claimed that some of the information sought was too general in scope and had no bearing on the individual discrimination charges. *Id.* at 43. The court acknowledged that the EEOC may only subpoena relevant information but held that evidence of Roadway's employment practices, other than those specifically charged, was relevant in this case because it helped illuminate the individual complaints of discriminatory discharge. *Id.* (citing *Blue Bell*, 418 F.2d at 358).

In *Ford Motor*, 26 F.3d 44, the Sixth Circuit addressed an individual charge alleging "continuing" discrimination, "not one isolated denial of promotion." *Id.* at 47. Consequently, the court determined that broader comparative information was relevant to the EEOC's determination of whether discrimination occurred. *Id.* The claimant argued that she was treated differently than similarly situated men, so the EEOC required information as to whether she was actually similarly situated to men who were promoted.

*Id.* at 48. Thus, it was "both reasonable and relevant for EEOC to have access to hiring and promotion information on other employees." *Id.*[5]

These Sixth Circuit cases confirm that subpoenaed information must still comply with statutory requirements, 42 U.S.C. § 2000e–8, and demonstrate that the scope of the EEOC's subpoena power in any given case is a fact-specific inquiry. *See Ford Motor*, 26 F.3d at 47 (affirming that "the appropriate scope of investigation depends on the circumstances of a particular case"). Even when the EEOC suspects a larger-scale pattern of discrimination, the Court still has a duty to determine whether information sought is relevant to the charge. *See id.* (providing that, although the Congress intended the EEOC to have broad access to relevant information, it is still the *court's* duty to determine relevance of material sought).

Unlike in *Blue Bell*, *Cambridge Tile*, *Roadway*, *Ford Motor*, and *UPS*, the Court finds that the information sought by the EEOC in this case is not relevant to Ms. Cordero's charge. First, the Court is not convinced that her charge alleges a pattern or practice of discrimination, as argued by the EEOC. Rather, the wording of her charge merely contrasts her situation with that of another employee who was promoted. In contrast with the plaintiff's amended charge in *UPS*, nothing in the language of Ms. Cordero's charge

---

[5] Recently, the Sixth Circuit affirmed allowance of subpoenaing wider employment information in the context of an Americans with Disabilities Act ("ADA") charge. *EEOC v. United Parcel Service, Inc.* (*UPS*), No. 16-2132, 2017 WL 2486017 (6th Cir. June 9, 2017). The court in *UPS* reiterated that § 2000e-8(a)'s relevancy requirement does not "force the EEOC only to review evidence concerning the specific charge." *Id.* at *2. It also confirmed, however, that the "true test of relevance" is "whether the evidence provides context for determining whether discrimination has taken place." *Id.* (internal citation and quotation marks omitted).

indicates her desire to bring a claim on behalf of the other employee or to allege a pattern of discriminatory behavior. *See UPS*, 2017 WL 2486017, at *1, 3 (asserting that the plaintiff's amended charge stated, "I am aware that all other employees subject to Health and Safety incident action/reports have had their confidentiality breached in the same manner as me," and thus finding that the plaintiff's charge was "not limited to himself"). Consequently, there is no actual pattern-or-practice charge in this case.

Second, the Court finds that other employees' information does not provide context for, or shed light on, Ms. Cordero's retaliation charge. *See id.* at *2 (affirming that the "true test of relevance" is "whether the evidence provides context for determining whether discrimination has taken place"). Respondent has admitted that it required all employees seeking a promotion to sign the release for the past twenty years and that anyone who refused to sign the release was denied a promotion. Thus, the EEOC need not evaluate broader employment information in order to determine whether respondent refused to promote Ms. Cordero because of her refusal to sign the waiver. Unlike in the cases cited by the EEOC, employment practices of respondent other than those specifically charged are not relevant to the underlying charge in this case, which is the only relevance of consequence. *See Royal Caribbean*, 771 F.3d at 761 ("The relevance that is necessary to support a subpoena for the investigation of an individual charge is relevance to the contested issues that must be decided to resolve that charge, not relevance to issues that may be contested when and if future charges are brought by others.").

The Court concludes that the EEOC has not demonstrated the relevance of the subpoenaed information to Ms. Cordero's retaliation charge, and it is not, therefore, entitled to enforcement of its subpoena. *See* 42 U.S.C. § 2000e–8(a) (asserting that the EEOC is only entitled to "any evidence of any person being investigated or proceeded against that relates to unlawful employment practices . . . and is relevant to the charge under investigation"); *Shell*, 466 U.S. at 64 (stating that "the EEOC's investigative authority is tied to charges filed with the Commission; unlike other federal agencies that possess plenary authority to demand to see records relevant to matters within their jurisdiction, the EEOC is entitled to access only to evidence 'relevant to the charge under investigation'"). Consequently, the Court will overrule the EEOC's objection on this ground and, like Judge Guyton, will decline to reach the issue of whether the EEOC's subpoenaed information is unduly burdensome.

**B.  Lawfulness of Respondent's Policy**

Second, the EEOC objects to Judge Guyton's conclusion that "the unlawfulness of Respondent's employment practice is not dependent on how many other employees signed a release" [Doc. 14 p. 12 (citing Doc. 10 p. 7)]. The EEOC argues that "the fact that a charge may not ultimately be provable or sustainable does not render it invalid" [*Id.*]. It does not further explain, however, how this supposedly invalidates Judge Guyton's conclusion.

Although the EEOC need not prove "probable cause or reasonable cause to believe that the charge of discrimination is true," *K-Mart*, 694 F.2d at 1066, and the Court

acknowledges that it may not "use an enforcement proceeding as an opportunity to test the strength of the underlying complaint," *McLane Co. v. EEOC*, 137 S. Ct. 1159, 1165 (2017), the EEOC still bears the burden of establishing the relevance of information sought. 42 U.S.C. § 2000e–8(a). While the Court agrees that the merits of Ms. Cordero's claim is not at issue, this does not alter its conclusion as to the EEOC's application, and Judge Guyton did not rule otherwise. Thus, the Court will also overrule this objection.

### C.     Investigation of Recordkeeping Violations

Finally, the EEOC argues that respondent's counsel admitted to respondent's failure to preserve its employee records, which is required under Title VII [Doc. 14 pp. 12–13]. The EEOC contends, therefore, that it has a duty to investigate this recordkeeping violation and that the subpoenaed information will aid in this investigation [*Id.* at 13]. It submits that the EEOC is not required to amend the charge or to file a separate charge in order to investigate the alleged recordkeeping violation [*Id.*].

Judge Guyton did not address this issue in his M&O, and the EEOC did not raise this argument in its original application or in its reply [Docs. 1, 7]. Counsel for the EEOC appears to have raised this issue for the first time during the February 28, 2017, hearing before Judge Guyton, while replying to respondent's oral argument [Doc. 13 p. 34]. At the conclusion of the hearing, counsel stated that respondent has a statutory duty to keep, preserve, and make available employment records during a Title VII investigation [*Id.*]. Counsel for the EEOC then informed Judge Guyton that counsel for respondent told him recently that the records "are not available because the respondent has been destroying

15

them" [*Id.* at 35]. According to the EEOC, respondent's practice of deleting employees from the system after their employment is terminated amounts to a recordkeeping violation under Title VII [*Id.*]. Thus, counsel for the EEOC contended, "if they have engaged in a recordkeeping violation, then that itself becomes part of the charge, and that has to be investigated too" [*Id.*]. Because the EEOC raised this argument for the first time in response to respondent's oral argument, respondent did not have the opportunity to rebut these claims of recordkeeping violations.

The EEOC cites to no case law in support of its argument that it need not file a new recordkeeping charge in order to investigate the matter. Rather, case law firmly establishes that the pertinent inquiry in this brand of proceeding is whether the subpoenaed information is (1) within the agency's authority, (2) reasonable in scope, and (3) relevant to the investigation. *Univ. Penn. v. EEOC*, 493 U.S. 182, 191 (1990). The EEOC has not brought a charge of recordkeeping violation, and it has not demonstrated how the subpoenaed information at issue is relevant to the EEOC's investigation into Ms. Cordero's charge. Consequently, the Court will overrule this final objection of the EEOC.

## IV. Conclusion

As addressed above, the Court construes Judge Guyton's M&O [Doc. 10] as a report and recommendation. Accordingly, upon careful and *de novo* review of the record and the law, the Court finds that the recommendations contained in Judge Guyton's Report [Doc. 10] are correct. The EEOC's objections [Doc. 14] will, consequently, be **OVERRULED**.

16

The Court will **ACCEPT in whole** the Report and Recommendation [Doc. 10] and incorporate it into this Memorandum Opinion. Accordingly, for the reasons stated herein, the EEOC's Application for an Order To Show Cause Why an Administrative Subpoena Should Not Be Granted [Doc. 1] will be **DENIED**, and the Clerk of Court will be **DIRECTED to close** this case.

ORDER ACCORDINGLY.

s/ Thomas A. Varlan  
CHIEF UNITED STATES DISTRICT JUDGE